# EXHIBIT 1





# Certificate of Recordation

This is to certify that the attached document was recorded
in the Copyright Office on the date and in the place shown below.

This certificate is issued under the seal of the
United States Copyright Office.

| DATE OF RECORDATION | |
| --- | --- |
| 27Jul10 | |

| VOLUME | DOC. NO. |
| --- | --- |
| 3592 | 739 |

| VOLUME | DOC. NO. |
| --- | --- |
| | |

*Maria A. Pallante*

Acting Register of Copyrights and
Associate Librarian for Copyright Services

Copyright Office fees are subject to change.
For current fees check the Copyright Office website at
www.copyright.gov, write to the Copyright Office,
or call (202) 707-3000.

**⊙ Document Cover Sheet**
UNITED STATES COPYRIGHT OFFICE

**For Recordation of Documents**

Volume __9592__  Document __739__

Volume _____  Document _____

Date of recordation  M __7__ D __27__ Y __10__
(ASSIGNED BY THE COPYRIGHT OFFICE)

Funds received _____

---

**DO NOT WRITE ABOVE THIS LINE · SEE INSTRUCTIONS ON REVERSE**

---

To the Register of Copyrights: *Please record the accompanying original document or properly certified copy thereof.*

**1** First party name given in the document
Matthew Chapman
*(IMPORTANT: Please read instruction for this and other spaces.)*

**2** First title given in the document
The Ledge

**3** Total number of titles in the document
1

**4** Amount of fee calculated

**5** Fee enclosed
☐ Check   ☐ Money order
☑ Fee authorized to be charged to Copyright Office deposit account

Deposit account number _____

**Thomson CompuMark**            **061794**
Deposit account name

**6** Completeness of document
☑ Document is complete by its own terms        ☐ Document is not complete. Record "as is."

IMPORTANT NOTE: *A request to record a document "as is" under 37 CFR §201.4(c)(2) is an assertion that: (a) the attachment is completely unavailable for recordation; (b) the attachment is not essential to the identification of the subject matter of the document; and (c) it would be impossible or wholly impracticable to have the parties to the document sign or initial a deletion of the reference to the attachment.*

**7** Certification of Photocopied Document   Complete this certification if a photocopy of the original signed document is substituted for a document bearing the actual original signature.
NOTE: *This space may not be used for documents that require an official certification.*

I declare under penalty of perjury that the accompanying document is a true and correct copy of the original document.

Signature _____   Date _7/22/10_

Duly authorized agent of _Matthew Chapman_

**8** Return to:
Name  Mark Damon

Number/street  2934 1/2 Beverly Glen Circle #900   Apt/suite _____

City  Los Angeles _____  State CA _____  Zip 90077

Phone number _____   Fax number (310) 275-5202

Email _____

---

SEND TO: *Library of Congress, Copyright Office, Documents Recordation Section, 101 Independence Avenue SE, Washington, DC 20559-6000*
INCLUDE ALL THESE TOGETHER: (1) Two copies of this form; (2) payment from a deposit account or by check/money order payable to *Register of Copyrights*; and (3) your document.

FORM DCS  REV: 09/2007  PRINT: 09/2007 — **,000  Printed on recycled paper                    U.S. Government Printing Office: 2007-330-945/60.***

*V3592 D739*



**ASSIGNMENT**

For good and valuable consideration, receipt of which is hereby acknowledged, the undersigned, Matthew Chapman ("Assignor") hereby irrevocably grants, sells and assigns to Michael Mailer Films, Inc. ("Assignee"), all motion picture, television, home video, subsidiary and allied rights and other rights, in all languages and for the entire universe in perpetuity in and to that certain screenplay entitled, "The Ledge" (the "Property"), and all adaptations, dramatizations and translations thereof and the titles and themes thereof.

This assignment is executed and delivered pursuant to that certain letter agreement ("Agreement") dated April 24, 2009 between Assignor and Assignee relating to the Property. Reference is hereby made to the Agreement for further particulars with reference to Assignee's rights in, to and with respect to the Property and this Assignment is subject in all respects to the Agreement.

IN WITNESS WHEREOF, Assignor has executed this assignment on the $\underline{4}$ day of $\underline{May\ 2009}$, 2009.

("Assignor")

By: _____
Matthew Chapman

V3592 D739
Page 1

# Copyright Research Report

**THOMSON COMPUMARK**
You can't be more certain.™

**Property Searched:** THE LEDGE

| | |
|---|---|
| **Client Name:** | FORESIGHT UNLTD. |
| **Attention:** | **LARRY CHAN** |

**Type Of Search:** U.S. Original Screenplay Search

| | |
|---|---|
| **Our File:** | 166326311 |
| Date Completed: | February 17, 2010 |
| Date Received: | February 11, 2010 |

**Property:**

SCREENPLAY

We have taken all reasonable steps to ensure the completeness and accuracy of this report; however, for various reasons, including but not limited to the highly subjective nature of trademark, copyright and title searching and the possibility of incomplete and inaccurate data provided by the many vendors, publishers and other data sources used in compiling search reports, we cannot warrant that this report is complete or error free or otherwise guarantee results. AS A RESULT, WE DISCLAIM ALL WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

This search is valid only for the mark, goods, property or title noted above. If the mark, goods, property or title that were the subject of this search change even slightly, a new search should be performed. This report in no way constitutes a legal opinion. If applicable, the ranking of cited references into groups based on their relative relevance to the property searched is for the convenience of our clients in reviewing the search report and is not intended to convey an opinion regarding the legal significance of any cited reference. Acceptance and reliance upon this report constitutes an acceptance of its terms, conditions and limitations. Any liability arising out of the preparation of this report is limited to a refund of the search fee paid.

 **THOMSON REUTERS**

# Table of Contents

## Copyright Report

ANALYST REVIEW ..................................................................................................3

IDENTIFYING INFORMATION ...................................................................4

RECORDED INSTRUMENTS ......................................................................4

NEWSPAPER AND TRADE NOTICES ........................................................4

NOTES ......................................................................................................4

## Analyst Review – Copyright Report

Search Information

Type of Search: **U.S. Original Screenplay Search**
Property:       **THE LEDGE**
Detail:         **SCREENPLAY**

Data Information

Our copyright analysts search electronic records of the US Copyright Office, and on site at the Copyright Office investigate print card files and in-process copyright filings, in addition to Library of Congress records and other extensive entertainment industry sources in order to develop comprehensive reporting on specific works, and other properties and rights related to those works. The sources for each search may be tailored based on the kinds of properties involved.

The Full US Copyright search investigates creation and publication, copyright registration and renewal status, and assignment history of a specific work and any underlying material upon which it is based. Coverage of derivative works is also provided. The level of detail reported on some derivative works may vary depending on the type of use.

**Copyright Report – THE LEDGE**

## IDENTIFYING INFORMATION

**THE LEDGE** a/k/a **UNTITLED**: Screenplay by Matthew Chapman. According to "Filmtracker.com," record last updated December 15, 2009, this screenplay is the basis of a feature film that is in pre-production. See the "Newspaper and Trade Notices" section of this report for further details.

**Copyright Information:**    No record of copyright registration is found for this screenplay.

## RECORDED INSTRUMENTS

No assignment of copyright, nor any other document affecting any right, title or interest in this screenplay is found of record in the Copyright Office.

## NEWSPAPER AND TRADE NOTICES

**Filmtracker.com:**    Record last updated December 15, 2009. It was reported that a U.S. feature film entitled **THE LEDGE**, based on the screenplay by Matthew Chapman, was in pre-production at Michael Mailer Films and Foresight Unlimited. The film is to be directed by Matthew Chapman, produced by Matthias Visser, Michael Mailer, and Mark Damon, and will star Terrence Howard and Evan Rachel Wood.

According to the "Thomson Intellectual Property" database, record last updated November 6, 2009, Foresight Unlimited will handle sales in connection with this feature film.

## NOTES

We have searched the public access in-process records at the U.S. Copyright Office in connection with this property. Thomson CompuMark also maintains a proprietary database of materials submitted on behalf of its clients since August 2007. These records have also been searched in connection with this property.

**Foresight Unlimited, LLC**
("Company")
2934 ½ Beverly Glen Circle, Suite 900
Bel Air, California 90077

As of September 25, 2009 (the "Effective Date")

Michael Mailer Films, Inc.

Re:     *The Ledge* (written by Matthew Chapman, hereinafter "Chapman")

Dear Michael:

This letter will serve as the agreement (the "Agreement") between Michael Mailer Films, Inc. ("MMF") f/s/o Michael Mailer ("Producer") and Foresight Unlimited, LLC ("Company") (MMF, Producer and Company may hereinafter be referred to as the "Parties") in connection with the intended feature-length motion picture project tentatively entitled "The Ledge" (the "Picture"), to be based on the original screenplay of the same name written by Chapman (which original screenplay, together with all rights therein and thereto or based thereon, shall be referred to herein as the "Screenplay"), and is made in reference of the following facts and agreements:

A.   Reference is made to that certain Option Agreement between MMF and Chapman, dated April 24, 2009 (the "Option Agreement"). MMF represents that the Option Agreement is in full force and effect, and that the option granted pursuant to the Option Agreement extends through May 4, 2010. Subject to exercise of the option under the Option Agreement, MMF controls (or shall prior to any payments hereunder, own and control) all of the necessary rights in and to the Screenplay and all other rights necessary to produce the Picture.  Company acknowledges receipt of the Option Agreement and hereby approves of the form and content thereof.

B.   Subject to the right of reversion described in paragraph G below, and in consideration of Company's undertakings hereunder, MMF hereby grants Company an exclusive option ("Option") for a period of four (4) months from the date hereof ("Initial Option Period"),to purchase the rights in and to the Screenplay pursuant to the Option Agreement and to produce the Picture contemplated hereunder. The Initial Option Period may be extended through May 4, 2010 on written notice to MMF during the Initial Option Period, along with payment to MMF in the amount of $5,000 ("Option Extension Payment"), prior to expiration of the Initial Option Period.  Company may exercise the Option hereunder, by providing written notice to MMF during the Initial and/or Extended Option Period in which Company assumes all executory obligations of MMF pursuant to the Option Agreement and Director Agreement ,and MMF hereby irrevocably grants and assigns to Company, its successors, assigns and licensees, in perpetuity, throughout the universe all rights of every kind and nature in and to a) the Option Agreement, b) the Screenplay (to the extent owned or controlled by MMF), c)

-1-

the Picture, d) all contracts related to the Picture, including that certain Director
Agreement between MMF and Chapman, dated April 24, 2009 (the "Director
Agreement"), which Director Agreement has been approved by Company, any and all
rights related to or derived from the foregoing, including, without limitation final cut
rights (i.e., Mark Damon will control the final cut of the Picture). . If applicable, the
Option Extension Payment shall be applicable against any payments otherwise due to
Producer and/or MMF herein.

C.  Producer has provided Company with a tentative budget for the Picture. The parties
acknowledge that the foregoing budget is only MMF's estimate, and that the actual
production budget for the Picture shall be within Company's sole discretion and will
include, without limitation, reimbursement of all of Company's development costs
associated with the Picture incurred prior to the date of execution of this Agreement, as
well as those incurred hereafter until production of the Picture commences.

   a.  Producer Fee: If Company (and/or its licensees or assigns) produces the Picture,
       Producer shall be engaged to produce the Picture on a pay-and-play basis at a
       rate of compensation equal to $200,000 ("Producer Fee") payable to MMF for
       the services of Producer as follows: twenty percent (20%) pro-rata during pre-
       production of the Picture; sixty five percent (65%) pro rata during principal
       photography of the Picture; ten percent (10%) upon delivery of the Director's
       cut of the Picture; and five percent (5%) upon delivery of the Picture).
       Notwithstanding the foregoing, in the event the direct cost in-going budget (i.e.
       above and below the line only, and not including bond, contingency, financing
       charges for the Picture, marketing and sales costs and expenses, overhead, and
       payments to producers other than Producer) exceeds $8 million, the Producer
       Fee payable to MMF for the producing services of Producer shall be $250,000.
       Notwithstanding the foregoing, payment hereunder will not commence prior to
       close of production financing for the Picture. MVM MN

   b.  Location: In the event Producer is required to travel to a distant location (i.e.,
       more than 50 miles from Producer's principal residence) in connection with the
       services to be rendered herein, Producer shall be provided with r/t
       transportation, accommodations and expenses on a basis no less favorable that
       Mark Damon and the director of the Picture.

   c.  Development Expenses: If Company produces the Picture, MMF shall be
       entitled to reimbursement of its direct, out-of-pocket development expenses
       actually paid in connection with the Picture, in the amount of $25,000, payable
       on the earlier of (i) one weeks after commencement of principal photography,
       or (ii) close of production financing for the Picture; provided, however, that
       Company shall use best efforts to close production financing and reimburse said
       development expenses prior to the start of principal photography.

D.  Company has designated Mark Damon (hereinafter "Damon") to function with Producer
as the sole named creative producers of the picture. In the event the Picture is produced
pursuant to the terms hereof, Company shall be the distributor of the Picture in all
media, throughout the universe, in perpetuity. Company shall be entitled to a
distribution fee of fifteen percent (15%), inclusive of other sub-agency fees, if any, in the
Domestic Territory, and twenty (25%) percent in all other territories, inclusive of sub-

-2-

agency fees. Company shall be entitled to recoup all actual out of pocket marketing and distribution expenses (up to a cap of $250,000 with respect to the marketing of international sales) and a non-accountable market attendance charge of $125,000. For avoidance of doubt, the marketing expense cap only applies to international sales activity and not actual distribution expenses in any particular territory, residuals, talent participations or delivery costs, among others.

E. During the initial Option Period, Company shall negotiate in good faith to secure the services of actors for the leading roles in the Picture, on such terms and conditions as Company shall deem acceptable.

F. Producer and/or MMF shall execute any documents and do any other acts consistent herewith as may be reasonably required by Company or its assignees or licensees to further evidence or effectuate Company's rights as set forth in this Agreement, including, but not limited, to the Option Agreement. Upon Producer's or MMF's failure to do so after ten (10) days written notice, Producer and MMF hereby appoint Company as Producer's and MMF's attorney-in-fact for such purposes (it being acknowledged that such appointment is irrevocable and coupled with an interest) with full power of substitution or delegation. Copies of any such documents executed on behalf of MMF shall be provided to MMF within ten (10) days of execution thereof.

G. In the event the Picture is not fully financed and formal pre-production has not commenced during the initial Option Period or Extended Option Period, if applicable (the "Expiry Date"), all rights and obligations in connection with the Option Agreement in connection with the Screenplay shall automatically revert to MMF with no further obligations between the Parties.

H. Producer and MMF represent and warrant that: (i) they have the right, power and authority to enter into and perform this Agreement; (ii) MMF owns (and will continue to own through and including the Expiry Date) all necessary rights in and to the Option Agreement, and, subject to the Option Agreement, Screenplay and Picture; all agreements relating to such rights are in full force and effect and neither Producer nor MMF are in default under any provision thereof and (iii) there are, and will be, no claims, liens, encumbrances or rights of any nature in or to Producer's and/or MMF's rights to the Option Agreement, Screenplay or Picture or any part thereof which can or will impair or interfere with the rights of Company hereunder; and (iv) none of the granted rights have been optioned, assigned or licensed by Producer or MMF or any party acting under the authority of or on behalf of either; (v) there are no written or oral agreements or commitments whatsoever with respect to the Screenplay or Picture or with respect to any rights of any kind and nature therein, other than as set forth in the Director Agreement, Option Agreement, Howard Offer, Sarsgaard Offer, Hunnam Offer and Wood Offer. Company hereby represents and warrants that: (i) Company has the full right and authority to enter into this Agreement (ii) Company is not subject to any obligation or disability which will materially prevent or interfere with the full completion and performance of all the obligations and conditions to be kept and performed hereunder. Each party shall indemnify and hold the other harmless from and against all liabilities, penalties, losses or expenses, including reasonable outside attorney's fees,

-3-

imposed upon, sustained or incurred by reason of such party's breach of any of its representations and warranties made herein.

I.   If Company elects to produce the Picture hereunder, then:

1.   Company shall be entitled to charge and retain its customary overhead fees, and fixed fee for the producing services of Damon as contemplated above, , provided that the foregoing charges shall collectively not exceed 12% of the budget for the Picture.

2.   It is understood that the relevant equity investors in the Picture may be entitled to credits and production fees in connection with their investment, beyond such parties' interest as an investor in the Picture, and each party here acknowledges and hereby pre-approves such investor conditions.

3.   "Produced by" credit (assuming that each of the parties in fact produce the Picture as completed) shall be equal and shared solely by Damon and Producer, on screen in the main titles in the position directly adjacent to the Writer/Director credit as well as the end crawl and in the billing block of paid ads wherever the Director credit appears, in accordance with standard industry practices (with Producer in first position, Damon in second position), and it is the intention that such producer credits shall be equal in size, tied in placement and contiguous. Any and all other producer, executive producer or similar credits shall be subject to Company's approval. Any other "producer" credits shall be designated as "producer" hereunder and not as "produced by" unless Producer (provided Producer in fact produces the Picture) shall otherwise consent.

4.   Company shall accord the following credits in connection with the Picture to Producer's designees: (i) one (1) "co-executive producer" credit; (ii) one (1) "co-producer" credit, both on screen in main titles and in the billing block of paid ads (subject to distributors' customary exclusions); and (iii) one (1) "associate producer" credit in the end crawl.

5.   Company will have a production credit and will also have the right to designate a production company to share the above-title production credit, and except as required by the equity financiers of the Picture, no production company (including "presentation" or in "association with" or similar) credits shall be permitted absent Company's approval. Provided that Producer has in fact produced the Picture and is not otherwise in material breach of this Agreement, Company hereby pre-approves an on screen credit in the main titles in the form "A Michael Mailer Production" adjacent to the aforementioned production/presentation credit(s) and in the billing block of paid ads whenever any company credits appear.  Company also agrees to provide MMF a static logo credit in the billing block of paid ads whenever Company's logo appears. Company will give good faith consideration to including MMF's animated logo on screen, subject to the approval of the domestic distributor.

6.  Producer's individual credit shall appear in any so-called "excluded ads" whenever any individual producer credit appears in such "excluded ads," excepting congratulatory and award ads (including nomination awards) in which only the person so congratulated receives credit.

7.  Except as expressly provided herein, all aspects of Producer, MMF, or their designee's credit, and each of them, shall be determined by Company in its sole discretion. No casual or inadvertent failure to comply with the foregoing, or the failure by any third parties to comply with their agreements with Company in connection with the foregoing credit obligations shall constitute a breach of this Agreement by Company, provided that upon receipt of written notice from MMF specifying a material failure to accord credit properly in accordance with this Agreement, Company shall use best efforts to cure prospectively such material failure to accord MMF credit hereunder with regard to the pre-print and/or advertising materials created after the date of Company's receipt of such notice. Except as otherwise stated in this Agreement, all other aspects of credits to be afforded in respect of the Picture shall be in Company's sole discretion. Company shall contractually bind the U.S. distributor of the Picture, and shall use best efforts to contractually bind all other distributors to comply with the credit requirements set forth herein including, but not limited to, providing notice of credit requirements herein to such other distributors.

8.  Producer shall perform the normal and customary "in-person" full time and producing services in connection with the Picture to the best of Producer's ability and shall have principal day-to-day producing responsibility consistent with the elements as reasonably approved by Company. In the event the Picture is greenlit prior to the Expiry Date, Producer's services in connection with the Picture shall be on a non-exclusive first priority basis until five weeks prior to the commencement of principal photography on the Picture, thereupon exclusive through one week following wrap, and thereafter on a non-exclusive basis through delivery of the Picture as required by the distributor(s) of the Picture. Notwithstanding the foregoing, if principal photography commences after February 1, 2010, Producer's exclusivity will be subject to his prior professional commitments.

9.  Upon request, Producer and MMF shall enter into an industry standard producer agreement (subject to good faith negotiations) for the services of Producer, which agreement shall be in accordance with the terms set forth in this Agreement. Until such time as such is executed, MMF and Producer agree that in the event the Picture is greenlit, all of their contributions to the Picture, including without limitation the results and proceeds of their development and production services, are a work made for hire for Company.

10. Subject to MMF's full performance of all services and material obligations in connection with the Picture, MMF and one (1) guest shall be invited to attend all celebrity premieres (if any), initial festival screening (if any), and award shows (if nominated and if invitations to such awards show are made available to Company)

-5-

In connection with the Picture. Company will not be obligated to furnish MMF or MMF's guest with transportation or expenses, if MMF elects to attend such premiere, festival or awards show; provided however, if the Picture has a domestic theatrical distributor prior to the United States theatrical premiere, Company shall use its good faith efforts to have the distributor provide travel and expenses for MMF, or such of the foregoing as Company is able to obtain from the distributor, with respect to any premiere not in the Los Angeles metropolitan area. Producer shall be provided with travel and expenses on a basis no less favorable than Damon.

J.  After the deduction of actual, verifiable third-party distribution fees and costs, sales commissions and actual verifiable out-of-pocket costs (including the fees and costs paid to Company in connection with paragraph D above, which shall be treated as an unrelated third party in connection therewith), and including all third party participations and deferments to talent and third party financiers, directly in connection with the Picture, the recoupment of equity, plus, for purposes of the calculations to MMF and Chapman hereunder, a premium return on such equity money of up to twenty (20%) percent (for avoidance of doubt, there is no limitation on the return or profit participation Company may negotiate with equity investors, only that for purposes of calculation of recoupment for Net Proceeds allocable to MMF and Chapman, the return on investment is limited to a 20% fixed premium, and any profit participation is not limited), all remaining revenues received from the exploitation of the Picture (i.e. net sums after payment of the equity investor share) shall constitute "Net Proceeds". Following deduction of any third party Net Proceed participants (including cast, crew, financiers and Chapman [pursuant to the Director Agreement]) Company and MMF shall split the remaining net proceeds eighty-five percent (85%) to Company and fifteen percent (15%) to MMF; provided, however, the amount allocable to MMF shall be no less than five percent (5%) of one hundred percent (100%) of Net Proceeds. MMF and Chapman shall have standard accounting (i.e., quarterly for first 3 years of distribution and bi-annually thereafter) and audit rights. Furthermore, if the Picture is produced herein, MMF and Damon shall each be entitled to the following bonus compensation: (i) $50,000 when the domestic box office of the Picture as reported in Variety (the "DBO") reached 3x the negative cost of the Picture; $50,000 when the DBO reached 4x the negative cost of the Picture; and $50,000 when the DBO reached 5x the negative cost of the Picture; (ii) a $50,000 bonus in the event the Picture is nominated for an Academy Award for best picture; plus $50,000 for a win (i.e., total of $100,000 inclusive of the nomination bonus); and (iii) a $50,000 bonus in the event the Picture is nominated for an Golden Globe for best picture; plus $50,000 for a win (i.e., total of $100,000 inclusive of the nomination bonus). All of the foregoing bonuses payable to MMF shall be advances against MMF's share of Net Proceeds;

K.  Company may choose to "greenlight" the Picture in its sole and absolute discretion. For avoidance of doubt, any such "greenlight" decision will be subject to Producer's timely delivery to Company of the relevant "chain of title" (the Option Agreement and proof of all extensions and payments therefor hereby deemed as relevant chain-of-title) and binding written Director Agreement (Director Agreement dated April 24, 2009 has been received and is deemed accepted); and binding agreements with approved key talent.)

-6-

L. Subject to reasonable consultation with Producer (If Producer is in full compliance with his obligations hereunder, and only with respect to material production decisions ), and subject to the terms of the Director Agreement, all creative and business approvals/decisions in connection with the production and distribution shall vest solely with Company.

M. As between Producer and Company, and subject to the terms of this Agreement, ownership of the Picture and rights therein or ancillary thereto shall be owned by Company. The parties expressly acknowledge and accept that Company shall not be required to produce the Picture unless and until it has approved all material elements for the Picture, and the financial and creative elements of the Picture otherwise comply with all of the requirements hereof (except to the extent otherwise approved in writing by Company). MMF shall have a thirty (30) day right of first refusal to provide producing services with respect to any subsequent production (with the terms of this transaction as a floor) and derivative works (subject to broadcaster approval in the case of subsequent television productions).

N. No action or omission by Company shall constitute a breach of this Agreement unless Producer first notifies Company in writing setting forth the alleged breach or default and Company does not cure the same within 10 days.  In either event, with the exception of the failure to pay the Producer Fee and/or the Option Extension Payment, if applicable, the sole remedy of Producer and MMF shall be an action at law for damages, it being agreed that in no event shall either MMF or Producer seek or be entitled to injunctive or equitable relief by reason of any breach or threatened breach of this Agreement by Company or any assignee or licensee.

O. All results and proceeds of MMF and Producer's services hereunder, including, without limitation, all literary and musical material, designs and inventions of Producer, shall be deemed a work- made-for-hire for Company within the meaning of the copyright laws of the U.S. or any similar or analogous law or statute of any other jurisdiction and, accordingly, Company shall be the sole and exclusive owner thereof for all purposes, including, without limitation, in connection with the distribution, exhibition, advertising and exploitation of the Picture and any part thereof and the allied and ancillary rights therein, in each case, in all media and by all means now known or hereafter devised and in all languages, throughout the universe in perpetuity. Any services including, without limitation, writing services, rendered by Producer in connection with the Picture shall be covered by the preceding sentences (unless Company and Producer have entered into a separate written agreement for such services), and sums otherwise payable under this Agreement shall be deemed full payment for such services.  If for any reason Producer's services are not deemed a work-for-hire for Company, then Producer hereby irrevocably assigns, grants and sets over unto Company, in perpetuity and throughout the Universe, all of Producer's rights of every kind and nature, including all rights of copyright, in and to the Picture and all of the results and proceeds of Producer's engagement and Producer's services hereunder.

P. While the parties hereto may execute a more detailed agreement containing the above provisions and those additional provisions normally and customarily contained in agreements of this kind, unless and until such additional document(s) is/are executed

-7-

between the parties, this agreement represents the entire agreement between the parties, supersedes any other statements or agreements in connection with the within subject matter, and may not be altered absent a signed amendment. All notices shall be in writing and sent to the above addresses or to such other addresses are communicated in writing by one party to the other. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, trustees, successors and assigns. This Agreement may not be assigned by Producer, except that Producer may assign its right to receive monies hereunder to no more than one other party, no more than once per year. Company shall have the right to assign any or all of its rights under this Agreement to any person or entity. Upon such assignment Company shall have no further obligations to Producer hereunder. Notwithstanding the foregoing, no such assignment or license shall relieve Company of its obligations hereunder unless the assignee is a "major" or "mini major" United States distributor of motion pictures (as those terms are commonly understood in the motion picture industry), provided such assignee or licensee assumes in writing Company's obligations hereunder. This Agreement shall be governed in accordance with California law (and under California jurisdiction) applicable to agreements as if performed in said state. This Agreement shall not be interpreted so as to favor one party over another hereunder. Disputes under this Agreement shall be subject to final and binding arbitration before Judicial Arbitration and Mediation Services, Inc. ("JAMS"), and California shall be the exclusive venue for such dispute resolution (unless the parties otherwise agree in writing), each party to bear the respective costs of such arbitration, in accordance with JAMS rules. Each party hereto has been advised to have this Agreement reviewed by such party's attorney prior to execution.

The signatures below shall represent a binding agreement to the above.

Very truly yours,
Foresight Unlimited, LLC

By: _____
Mark Damon, CEO

Agreed and Accepted:
Michael Mailer Films, Inc. f/s/o Michael Mailer

By: _____
Michael Mailer, Authorized Officer

By: _____
Michael Mailer, individually as Producer

-8-

## MOTION PICTURE SALES AGENCY AGREEMENT

## THE LEDGE

This agreement (the "Agreement") is entered into as of the 4th day of October, 2009, by and between The Ledge Productions, LLC (hereinafter referred to as "Owner") and Foresight Unlimited, LLC (hereinafter referred to "Agent") with regard to the following subject matter:

### BASIC TERMS

1.   Description of the Motion Picture:

*TITLE* :  "The Ledge"
*WRITER*:  Matthew Chapman
*DIRECTOR*:  Matthew Chapman
*LEAD CAST*: Terrenee Howard, Charlie Hunnam, Peter Sarsgaard, Evan Rachel Wood
*RUNNING TIME*:  No less than 85 minutes, and no more than 110 minutes.

(hereinafter referred to as the "Picture").

2.   **Engagement**: Owner hereby engages Agent as Owner's exclusive sales agent for the exploitation of all Rights (as defined below) in and to the Picture in the Territory. Agent's services hereunder shall include:

(a)  Negotiating all agreements for the distribution and exhibition of the Picture throughout the Territory in accordance with the asks/takes set forth in Exhibit A (attached hereto and incorporated herein by this reference).
(b)  Entering into distribution agreements as agent for Owner in the Territory.
(c)  Supervising of the distribution, advertising and promotion of the Picture by all distributors.  Agent will comply with and will use reasonable good faith efforts to cause distributors to comply with the on screen and paid ad credits provided by Owner to Agent with respect to the Picture.
(d)  Using reasonable good faith efforts to collect monies from distributors and the review of all accountings with respect thereto.  Agent shall further use reasonable good faith efforts to collect Notices of Assignment and Distributor's Acceptances from all distributors entering into agreements with Agent for the distribution and exhibition of the Picture to the extent required by Owner's lender. If appropriate in the specific territory and if agreed to by the distributor, Agent shall utilize the services of a third party international licensing and distribution servicing entity (such as Freeway or Atrium) to optimize the collection of licensing fees and royalties from the distributors in those territories.
(e)  Preparing and delivery of film and advertising materials, as required in distribution agreements entered into by Agent.
(f)  Supervising of openings of the Picture in the major territories and using reasonable efforts to arrange the participation of the Picture in film festivals.
(g)  Representing of the Picture at film markets.

3.   Territory:  The universe, including, without limitation, all embassies and other premises of diplomatic services, oil rigs, military bases and marine installations, airlines in flight and ships at sea flying the flags of any country within the Territory or administered or serviced from any of the areas therein (collectively, the "Territory").

4.   Term:  The period of Agent's engagement hereunder shall commence on the date hereof and continue for twenty-five (25) years commencing upon acceptance of Delivery (the "Term"). The Term may only be extended via a written instrument mutually acceptable to Owner and Agent and signed by both parties. Notwithstanding the foregoing, Agent shall have the authority, exercisable consistent with this Agreement, to enter into subdistribution agreements which extend beyond the Term of this

Agreement and any such agreements entered into or rights granted prior to the end of the Term of this Agreement which have not by their terms terminated or expired, shall remain in effect, and Agent shall nevertheless he entitled to the Sales Fees on such Gross Receipts and to recoup any Distribution Expenses (as such terms are defined in the CAM Agreement) relating to such subdistribution agreement until such subdistribution agreement is terminated or expires by its terms

5.  Rights: Owner hereby irrevocably appoints Agent throughout the Territory during the Term to be the sole and exclusive agent to license the right to exhibit, distribute, market, reissue, transmit, perform and otherwise deal in and exploit the Picture and trailers thereof, and excerpts and clips therefrom, in any and all languages and versions (including dubbed, titled and narrated), and in all sizes and gauges of film and for all purposes all rights in and to the Picture now known or hereafter devised in any and in all media now known or hereafter discovered including, without limitation, the following: Theatrical Rights, Non-Theatrical Rights, Television Rights, Home Video Rights, Commercial Video Rights Multimedia and On-Line Rights, Music Rights, Ancillary Rights, Public Video Rights, New Media and all Incidental Rights as to any of the foregoing rights (all as further defined in the Standard Terms and Conditions attached hereto and incorporated herein by this reference) (hereinafter referred to collectively as the "Rights").

6.  Allocation of Gross Receipts: Unless otherwise expressly agreed by the parties in writing pursuant to a collection account management agreement that may be entered into in connection with the Picture, Owner and Agent hereby agree that the Gross Receipts of the Picture shall be allocated as follows:

    A.  First, to Agent for its sales fee ("Sales Fee"), of 12.5% of foreign (outside the U.S.) Gross Receipts, and 5% of U.S. Gross Receipts, which shall be based on Agent's Gross Receipts exclusive of subdistributors' fees.

    B.  Next, to Agent to recoup its Distribution Expenses (as defined in the Standard Terms and Conditions), plus a market overhead fee of ▮▮▮▮▮▮▮.

    C.  Finally, the balance of Gross Receipts shall be payable 100% to Owner.

7.  Delivery: Owner shall deliver or provide access to (as noted on Schedule "D") all the delivery materials defined and specified in Schedule "D" ("Delivery Materials") hereto to Agent at the address first specified above not later than September 30, 2010. Owner shall correct any defects in delivery within 10 business days of Agent's notifying Owner of such defect.

8.  Credits:

    (a) Owner agrees to deliver to Agent, in a form reasonably satisfactory to Agent, a complete statement ("Owner's Statement"), setting forth the names of all persons, firms and corporations to whom Owner is contractually obligated or otherwise agreed to accord credit on screen and/or in any paid advertising and publicity for the Picture, and to include in Owner's Statement excerpts from such agreements defining or describing with particularity the form and nature of such credit.

    (b) Unless specifically agreed by Agent in writing to the contrary, Agent's obligation to accord credit in advertisements shall be subject to the customary exclusions of Agent's subdistributors. The rights and remedies of the person for whose benefit any such credit provision is made, in the event of any breach of any such credit provision, shall be limited to the right of such person to recover damages, if any, in an action at law, and in no event shall any such person be entitled by reason of any such breach to terminate such agreement or seek or be entitled to enjoin or restrain the exhibition of the Picture, and all contracts in which provision is made for the giving of credit shall expressly so provide unless Agent is specifically notified to the contrary.

2

(c) In the Territory, Agent or its designee shall be entitled to include its customary presentation credit and logo on screen and in all paid advertising in positions and sizes to be determined by Agent, provided that such logo shall be no greater in size than Owner's logo. Additionally, Agent shall be entitled to include its animated logo ahead of the Picture on screen in the main titles and trailer in the Territory.

(d) Agent will comply with the credits determined or prepared in accordance with the foregoing to the extent that it can do so without violating any applicable DGA, WGA or SAG collective bargaining agreement, and shall contractually obligate its licensees, subdistributors and agents to comply with such requirements. In no event, however, shall Agent be liable or responsible for any acts or omissions with respect to credits by any other person, firm or corporation. No inadvertent failure by Agent to provide credits in compliance with Owner's instructions shall constitute a breach of this Agreement, provided, that Agent shall use reasonable efforts to prospectively cure such failure upon written notice thereof from Owner

9.     Entire Agreement: This Agreement, along with the Standard Terms and Conditions attached hereto and incorporated herein by reference, as well as the Delivery Schedule and any other Exhibits referenced herein collectively represent the entire agreement of the parties and shall be binding on the parties hereto and their respective successors, licensees, assigns and other representatives in perpetuity. Any and all prior negotiations and understandings between the parties are hereby cancelled and superceded by the terms herein. If any inconsistency exists between the Standard Terms and Conditions and this Agreement, this Agreement shall prevail.

IN WITNESS WHEREOF, Owner and Agent have executed this Agreement as of the date indicated above to constitute a binding contract between them.

("OWNER")
The Ledge Productions, LLC

By _____
Its: _____DIRECTOR_____

("AGENT")
Foresight Unlimited, LLC

By: _____
Its: _____

3

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Acting Register of Copyrights, United States of America

**Registration Number**

## PAu 3-512-287

**Effective date of
registration:**

February 26, 2010

---

## Title

**Title of Work:** The Ledge

## Completion/Publication

**Year of Completion:** 2010

## Author

■ **Author:** Matthew Chapman

**Author Created:** script/play/screenplay

**Citizen of:** United States

**Year Born:** 1950

## Copyright claimant

**Copyright Claimant:** Matthew Chapman

2934 1/2 Beverly Glen Cirole, Suite 900, Bel Air, CA, 90077, United States

## Rights and Permissions

**Name:** Matthew Chapman

**Telephone:** 310-275-5222

**Address:** 2934 1/2 Beverly Glen Circle

Suite 900

Bel Air, CA 90077  United States

## Certification

**Name:** Matthew Chapman

**Date:** February 23, 2010

**Registration #:**   PAU003512287

**Service Request #:**   1-346758601



Jenna Sanz-Agero
2934 1/2 Beverly Glen Circle
Suite 900
Bel Air, CA 90077  United States

The Law Offices of

# *Dennis Angel*

1075 Central Park Avenue, Suite 306
Scarsdale, New York 10583

Telephone:  (914) 472-0820
           (212) 239-4225
Fax:       (914) 472-0826
Email:   dangelesq@aol.com
           www.dangelesq.com

Of Counsel:
Robert Angel
Washington, D.C.

Rebecca A. Moodie

### February 22, 2010

Via Mail and Email (larryc@foresight-unltd.com)

Mr. Larry Chan
Foresight Unlimited
2934 ½ Beverly Glen Circle, Suite 900
Bel Air, CA 90077

Request:   **TITLE REPORT**
Re:         **THE LEDGE**

Dear Larry:

You have advised us that Foresight Unlimited wishes to use the above title for a motion picture.

The following compilations, indices and records have been checked for possible uses of the above title:

o   Works registered for United States copyright from 1946 to date, including motion pictures, television, books, periodicals and contributions, screenplays, teleplays, scripts, plays, music, artwork and other works;

o   The United States Patent and Trademark Office records for all classes of marks, currently registered or pending;

o   Professional and Industry subscription sources, indices and collections compiled in our own library as well as The Library of Congress for the following: motion pictures, television, video (all formats), plays, radio, literature, music, etc.; and

o   Various Internet search engines for website references and domain name registrations.

The search discloses:

Mr. Larry Chan
THE LEDGE
Page 2

## MOTION PICTURES

1. **THE LEDGE**: motion picture reportedly in preproduction from Foresight Unlimited and Michael Mailer Films, with producers Matthias Visser, Michael Mailer and Mark Damon, writer-director Matthew Chapman, to star Terrence Howard, Evan Rachel Wood and Peter Saarsgard, described as "in an attempt to thwart a suicide jump, a cop learns of the circumstances that led to the jumper's predicament" (according to The Studio System updated as of December 15, 2009.)

Of interest is the following according to an article by Dave McNary published in the January 12, 2010 issue of Variety.com:

> "Peter Saarsgard...will soon begin production on Matthew Chapman's 'THE LEDGE.'

2. **THE LEDGE**: 2005 motion picture short from Dominant Gene Films, produced and written by Quinn Duffy and Tony Sommo, directed by Quinn Duffy, featuring Patrick Jones, described as "the rooftop party of an arrogant businessman is interrupted by a depressed plumber planning a suicide leap" (according to IMDb Pro.)

## TELEVISION

**THE LEDGE**: 1953 television presentation (30 minutes) of the anthology series "Schlitz Playhouse of Stars", written by Robert J. Shaw, starring Skip Homeier, Regis Toomey and Allene Roberts, currently offered for television by CBS Entertainment.

## VIDEO

**THE LEDGE**: 1987 music video of the below-mentioned song by The Replacements, produced by Shanon Oreck and David Naylor, directed by Bill Pope and Randy Skinner.

## LITERATURE

1. **THE LEDGE**: book by Richard Curtis Hauschild published by Dog Ear Publishing, LLC in 2009.

2. **THE LEDGE**: book by Travon Epps published by Publish America in 2008.

3. **THE LEDGE**: book by Blanaid McKinney published by Weidenfeld & Nicolson (London) in 2002 and by Trafalgar Square in 2003.

4. **THE LEDGE**: collection of poetry by Michael Collier published by Houghton Mifflin Harcourt in 2000 and in paperback in 2002.

02.22.10

5. **THE LEDGE**: book by Gertrude Schweitzer published by Delacorte Press in 1972.

There is other literature with the title **(THE) LEDGE**, alone or in combination with other words, including short stories, periodical contributions, etc.

## MUSIC

1. **THE LEDGE**: song performed by the musical group Paint It Black on the CD titled "New Lexicon" released by Jade Tree in 2008.

2. **THE LEDGE**: song performed by Reggie Washington on his CD titled "A Lot of Love, Live!" released by Jammin' Colors in 2007.

3. **THE LEDGE**: song performed by Larry Klimas on his CD also titled **THE LEDGE** released by Tillie's Kid in 2006.

4. **THE LEDGE**: song performed by Mary Gauthier on her CD titled "Filth & Fire" released by Signature Sounds in 2002.

5. **THE LEDGE**: song performed by the musical group The Replacements on the 1987 album "Pleased to Meet Me" released on CD by Sire in 1990 and the CD titled "All for Nothing/Nothing for All" released by Reprise in 1997.

6. **THE LEDGE**: song performed by Fleetwood Mac on their album titled "Tusk" released in 1979 rereleased on CD by Warner Bros. in 1990.

There is other music titled **(THE) LEDGE**.

## COPYRIGHTED WORKS

A search of the United States Copyright Office records under the title **THE LEDGE** discloses registrations for several of the above-mentioned works as well as music, sound recordings, unpublished text, artwork, etc., including the following sampling:

1. The above-mentioned music video in the name of Sire Records (as employer for hire) from 1987.

2. The above-mentioned book in the name of Michael Collier from 2002.

3. The above-mentioned song as part of the album "Tusk" as performed by Fleetwood Mac in the name of Warner Bros. Records, Inc. from 1979.

02.22.10

Mr. Larry Chan
THE LEDGE
Page 4

4. Serial/short story (as published in the August 1962 issue of Alfred Hitchcock's Mystery Magazine) from 1962 with copyright renewed in the name of Betty Ren Wright (author) in 1990.

5. Short story by Lawrence Sargen Hall from 1959 with copyright renewed in the name of the author in 1987.

6. An episode of "Lassie" from 1968 with copyright renewed in the name of Palladium, LP (PWH) in 1996.

7. An episode of "Have Gun, Will Travel" from 1960 with copyright renewed in the name of CBS, Inc. (PWH) in 1987.

## TRADEMARKS

A search of the United States Patent and Trademark Office records discloses trademarks under the title LEDGE as follows:

1. Pending trademark under the title LEDGE for entertainment services in the nature of an amusement, etc. in the name of 233 S. Wacker LLC (New York, NY.)

2. Pending trademark under the title LEDGE for wine in the name of Mark Clement (Paso Robles, CA.)

3. Registered trademark under the title LEDGE for sporting goods, etc. in the name of Andrew L. Peterson (American Fork, UT.)

Enclosed please find a sample list and entries from the PTO.

Of interest, please note that our search discloses pending and registered trademarks titled "LEDGE" in combination with other words, including the following:

A registered trademark under the title "Off THE LEDGE" for apparel in the name of Goldenhue LLC (Los Angeles, CA.)

## INTERNET

A limited search of various Internet search engines discloses domain name registrations as well as website references to THE LEDGE for several of the above-mentioned works including the motion picture, the song by Fleetwood Mac, the poetry collection by Michael Collier, etc. as well as for a poetry magazine, user-generated content including various Web Logs ("blogs"), user-generated video content, etc. Enclosed are sample pages from our search.

02.22.10

Mr. Larry Chan
THE LEDGE
Page 5

Our search also discloses businesses located nationwide named "THE LEDGE", alone and in combination with other words. Please see the enclosed sample page from our search.

Of interest are the following:

1. "On THE LEDGE": 1992 television special from HBO Entertainment, directed by Matthew Diamond, hosted by Joey Seehee, featuring Marga Gomez, Lypsinka and Dan Bucatinsky.

2. "The Lodger": 2009 motion picture from Merchant Pacific Corporation, directed by David Ondaatje, starring Alfred Molina, Hope Davis and Shane West.

3. "The Ledger": 1956 television presentation of the anthology series "NBC Matinee Theatre, written by Jack Laird, starring Lyle Talbot, Tom Brown and Ann Doran.

Of possible interest is the following:

"Off THE LEDGE": 2007 motion picture from Gala Films and Cordova Pictures, directed by Brooke P. Anderson, starring Nectar Rose, Justin Whalin and Nathan Baesel.

Motion picture/television/video titles of possible interest include "Jonathan Winters: On THE LEDGE" (1987 television special), "Life on THE LEDGE" (2005 motion picture), "Woman on THE LEDGE" (1993 television motion picture), etc.

Sincerely,

Dennis Angel

DA/pk

02.22.10



**United States Patent and Trademark Office**

Home|Site Index|Search|FAQ|Glossary|Guides|Contacts|eBusiness|eBiz alerts|News|Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Thu Feb 18 04:01:31 EST 2010*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST |

| NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout  Please logout when you are done to release system resources allocated for you.

Start  List At:        OR  Jump  to record:        **Record 12 out of 63**

TARR Status   ASSIGN Status   TDR   TTAB Status   *( Use the "Back" button of the Internet Browser to return to TESS)*



# LEDGE

| | |
|---|---|
| **Word Mark** | **LEDGE** |
| **Goods and Services** | IC 041. US 100 101 107. G & S: Entertainment services in the nature of an amusement, namely, an enclosed glass observation area suspended from the top of a tall building and operated as a tourist attraction |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 77666504 |
| **Filing Date** | February 9, 2009 |
| **Current Filing Basis** | 1B |
| **Original Filing Basis** | 1B |
| **Published for Opposition** | May 12, 2009 |
| **Owner** | (APPLICANT) 233 S. Wacker LLC LIMITED LIABILITY COMPANY DELAWARE 4th Floor 404 Fifth Avenue New York NEW YORK 10018 |
| **Attorney of Record** | Carol Anne Been |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |

**Live/Dead Indicator**     **LIVE**

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST |
| NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

 **United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Thu Feb 18 04:01:31 EST 2010*



| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST |
| NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout  Please logout when you are done to release system resources allocated for you.

Start  List At:  OR  Jump  to record:   **Record 14 out of 63**

TARR Status   ASSIGN Status   TDR   TTAB Status  *( Use the "Back" button of the Internet Browser to return to TESS)*

# LEDGE

| Word Mark | LEDGE |
|---|---|
| Goods and Services | IC 033. US 047 049. G & S: Wine |
| Standard Characters Claimed | |
| Mark Drawing Code | (4) STANDARD CHARACTER MARK |
| Serial Number | 77806494 |
| Filing Date | August 17, 2009 |
| Current Filing Basis | 1B |
| Original Filing Basis | 1B |
| Published for Opposition | January 12, 2010 |
| Owner | (APPLICANT) Adams, Mark Clement INDIVIDUAL UNITED STATES 5425 Vineyard Dr. Paso Robles CALIFORNIA 93446 |
| Type of Mark | TRADEMARK |
| Register | PRINCIPAL |
| Live/Dead Indicator | LIVE |



| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST |
| NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |



**United States Patent and Trademark Office**

Home|Site Index|Search|FAQ|Glossary|Guides|Contacts|eBusiness|eBiz alerts|News|Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Thu Feb 18 04:01:31 EST 2010*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST |
| Next List | First Doc | Prev Doc | Next Doc | Last Doc |

[ Logout ]  Please logout when you are done to release system resources allocated for you.

[ Start ] List At: [          ] OR [ Jump ] to record:        **Record 3 out of 3**

| TARR Status | ASSIGN Status | TDR | TTAB Status | *( Use the "Back" button of the Internet*
*Browser to return to TESS)*



| **Word Mark** | OFF THE LEDGE |
| **Goods and Services** | IC 025. US 022 039. G & S: T-shirts. FIRST USE: 20060700. FIRST USE IN COMMERCE: 20060804 |
| **Mark Drawing Code** | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| **Design Search Code** | 02.01.33 - Grotesque men formed by letters, numbers, punctuation or geometric shapes; Stick figures<br>26.09.02 - Plain single line squares; Squares, plain single line<br>26.09.12 - Squares with bars, bands and lines<br>26.11.02 - Plain single line rectangles; Rectangles (single line)<br>26.19.04 - Cubes (geometric) |
| **Serial Number** | 77023251 |
| **Filing Date** | October 17, 2006 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | June 5, 2007 |
| **Registration Number** | 3281533 |
| **Registration Date** | August 21, 2007 |
| **Owner** | (REGISTRANT) Goldenhue LLC LTD LIAB CO CALIFORNIA 5657 Wilshire Blvd #130-2 Los Angeles CALIFORNIA 90036 |
| **Description of Mark** | The mark consists of a stick figure drawing falling off a building with stylized text of the words, "Off the Ledge". |
| **Type of Mark** | TRADEMARK |

**Register**            PRINCIPAL
**Live/Dead Indicator**  **LIVE**

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST |
| NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

 **United States Patent and Trademark Office**

Home|Site Index|Search|FAQ|Glossary|Guides|Contacts|eBusiness|eBiz alerts|News|Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Thu Feb 18 04:01:31 EST 2010*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST |
| NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout | Please logout when you are done to release system resources allocated for you.

Start | List At: _____ OR | Jump | to record: _____  **Record 9 out of 63**

TARR Status | ASSIGN Status | TDR | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*

### Typed Drawing

| | |
|---|---|
| **Word Mark** | **LEDGE** |
| **Goods and Services** | IC 018. US 001 002 003 022 041. G & S: OUTDOOR USE SPORTING GOODS, NAMELY, BACKPACKS. FIRST USE: 20031130. FIRST USE IN COMMERCE: 20031130 |
| | IC 020. US 002 013 022 025 032 050. G & S: OUTDOOR USE SPORTING GOODS, NAMELY, SLEEPING BAGS AND CAMP CHAIRS. FIRST USE: 20031130. FIRST USE IN COMMERCE: 20031130 |
| | IC 022. US 001 002 007 019 022 042 050. G & S: OUTDOOR USE SPORTING GOODS, NAMELY, TENTS. FIRST USE: 20031130. FIRST USE IN COMMERCE: 20031130 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | 78154830 |
| **Filing Date** | August 15, 2002 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | May 11, 2004 |
| **Registration Number** | 3086038 |
| **Registration Date** | April 25, 2006 |
| **Owner** | (REGISTRANT) Peterson, Andrew L. INDIVIDUAL UNITED STATES 915 South 500 East #117 American Fork UTAH 84003 |
| **Attorney of Record** | CHRISTOPHER J. DAY |
| **Type of Mark** | TRADEMARK |

**Register**     PRINCIPAL

**Live/Dead**     LIVE
**Indicator**

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST |
| NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC | | | | | |

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

 **United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Thu Feb 18 04:01:31 EST 2010*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | PREV LIST | NEXT LIST | IMAGE LIST | BOTTOM |
| HELP |

Logout *Please logout when you are done to release system resources allocated for you.*

Start **List At:** _____ OR Jump **to record:** _____

# 63 Records(s) found (This page: 1 ~ 50)

Refine Search (live)[LD] AND (ledge)[COMB]          Submit

Current Search: S2: (live)[LD] AND (ledge)[COMB] docs: 63 occ: 209

| | Serial Number | Reg. Number | Word Mark | Check Status | Live/Dead |
|---|---|---|---|---|---|
| 1 | 79057783 | 3616339 | ADLEDGE | TARR | LIVE |
| 2 | 78883574 | 3236789 | THE LEDGES OF ST. GEORGE | TARR | LIVE |
| 3 | 78883514 | 3222476 | THE LEDGES OF ST. GEORGE | TARR | LIVE |
| 4 | 78614949 | 3089897 | WESTERN LEDGE STAK | TARR | LIVE |
| 5 | 78118991 | 2727198 | RUSTIC LEDGE | TARR | LIVE |
| 6 | 78050418 | 2716556 | KNOWLEDGE SCULPTING | TARR | LIVE |
| 7 | 78016973 | 2714557 | LEDGEWATER | TARR | LIVE |
| 8 | 78290890 | 3121423 | ISOTRAINER LEDGE | TARR | LIVE |
| 9 | 78154830 | 3086038 | LEDGE | TARR | LIVE |
| 10 | 78134146 | 2933933 | LEDGE-EZE | TARR | LIVE |
| 11 | 78055464 | 2578813 | KNOWLEDGE NIRVANA | TARR | LIVE |
| 12 | 77666504 | | LEDGE | TARR | LIVE |
| 13 | 77596718 | 3743179 | NO MORE CROOKED LEDGES! | TARR | LIVE |
| 14 | 77806494 | | LEDGE | TARR | LIVE |
| 15 | 77561674 | 3729511 | ROCKLEDGE A RESIDENTIAL RESORT RRRR | TARR | LIVE |
| 16 | 77435678 | 3729210 | DEL MARE LEDGESTONE | TARR | LIVE |
| 17 | 77881501 | | LEDGETECH | TARR | LIVE |
| 18 | 77420676 | | RED LEDGES -UTAH- | TARR | LIVE |
| 19 | 77695754 | 3698282 | CREATIVELEDGE | TARR | LIVE |
| 20 | 77209620 | 3693134 | LEDGE LIGHT FCU S.C.O.R.E. CREDIT REBUILDING PROGRAM | TARR | LIVE |
| 21 | 77512336 | 3572300 | BROOK LEDGE | TARR | LIVE |
| 22 | 77669512 | 3672804 | LEDGE CREEK | TARR | LIVE |

| 23 | 77744395 | | STONELEDGE | TARR | LIVE |
|----|----------|--|------------|------|------|
| 24 | 77423358 | 3601316 | ALABAMA LEDGE WIND FARM | TARR | LIVE |
| 25 | 77400213 | 3588650 | LEDGE-PAK | TARR | LIVE |
| 26 | 77159996 | 3537881 | LEDGES | TARR | LIVE |
| 27 | 77069306 | 3534608 | RUTLEDGE | TARR | LIVE |
| 28 | 77418992 | 3515748 | RED LEDGES - U · T · A · H · | TARR | LIVE |
| 29 | 77197409 | 3489763 | LEDGESTONE | TARR | LIVE |
| 30 | 77150596 | 3355865 | LOAD LEDGE | TARR | LIVE |
| 31 | 77023251 | 3281533 | OFF THE LEDGE | TARR | LIVE |
| 32 | 76146081 | 2485302 | DESERTLEDGE | TARR | LIVE |
| 33 | 76502171 | 2814787 | LEDGEWOOD CREEK | TARR | LIVE |
| 34 | 76108835 | 2630085 | ROUTLEDGEFALMER | TARR | LIVE |
| 35 | 76415197 | 2700117 | LLEDGE | TARR | LIVE |
| 36 | 76190471 | 2676446 | KNOWLEDGEADVISORS | TARR | LIVE |
| 37 | 76269954 | 2613506 | THE KNOWLEDGE TO HEAL, THE COMPASSION TO CARE | TARR | LIVE |
| 38 | 76630579 | 3052883 | SURELEDGE | TARR | LIVE |
| 39 | 76627517 | 3094756 | MIRACLE AT NESTLENOOK LEDGES | TARR | LIVE |
| 40 | 76552553 | 3123998 | LEDGES | TARR | LIVE |
| 41 | 76315681 | 3003168 | EXPRESSA SHARING KNOWLEDGE ONLINE | TARR | LIVE |
| 42 | 76309652 | 2749401 | NEURO-KNOWLEDGE | TARR | LIVE |
| 43 | 76248586 | 2738048 | KNOWLEDGE AT POINT OF DECISION | TARR | LIVE |
| 44 | 76237581 | 2764951 | INSIGHT BEGINS WITH KNOWLEDGE | TARR | LIVE |
| 45 | 75706567 | 2445083 | SAFE LEDGE | TARR | LIVE |
| 46 | 75636821 | 2441854 | STABLEDGE | TARR | LIVE |
| 47 | 75870285 | 2905264 | ERGOLEDGE | TARR | LIVE |
| 48 | 75778290 | 2372762 | CORNICHE | TARR | LIVE |
| 49 | 75478200 | 2266842 | MOUNTAIN LEDGE | TARR | LIVE |
| 50 | 75274304 | 2154918 | GRAND LEDGE | TARR | LIVE |

TESS HOME   NEW USER   STRUCTURED   FREE FORM   BROWSE DICT   SEARCH OG   PREV LIST   NEXT LIST   IMAGE LIST   TOP

HELP

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

# We're sorry. The domain name you requested is unavailable.

Clear & Search Again

theledge.com         View WHOIS (See who owns this domain)
theledge.net         View WHOIS (See who owns this domain)
theledge.org         View WHOIS (See who owns this domain)

# WHOIS Results for: theledge.com

Domain ID:
Domain Name: theledge.com
Created On: 17-Jan-1997 00:00:00
Expiration Date: 18-Jan-2014 00:00:00
Sponsoring Registrar: 'Check Whois' (NSI) (NSI)
Status: client_transfer_prohibited
Name Server: cns1.idirect.com
Name Server: cns2.idirect.com
Registrant ID: Unknown
Registrant Name: The Learning Edge Corporation
Registrant Organization: Unknown
Registrant Street1: 90 Claremont Street
Registrant Street2: Unknown
Registrant Street3: Unknown
Registrant City: Toronto
Registrant State/Province: ON
Registrant Postal Code: M6J-2M5
Registrant Country: CA
Registrant Phone: Unknown
Registrant Fax: Unknown
Registrant Email: Unknown
Admin ID: Unknown
Admin Name: Unknown The Learning Edge Corporation
Admin Organization: Unknown
Admin Street1: 90 Claremont Street
Admin Street2: Unknown
Admin Street3: Unknown
Admin City: (416) 596-7973 fax: 999 999 9999
Admin State: Unknown
Admin Postal Code: Unknown
Admin Country: Unknown
Admin Phone: Unknown
Admin Fax: Unknown
Admin Email: info@THELEDGE.COM

# WHOIS Results for: theledge.net

Domain ID:
Domain Name: theledge.net
Created On: 05-May-2000 00:00:00
Expiration Date: 05-May-2019 00:00:00
Sponsoring Registrar: 'Check Whois' (NSI) (NSI)
Status: client_transfer_prohibited
Name Server: ns1.theledge.net
Name Server: ns2.theledge.net
Registrant ID: Unknown
Registrant Name: GROENINGER, MATTHEW
Registrant Organization: Unknown
Registrant Street1: ATTN THELEDGE.NET
Registrant Street2: Unknown
Registrant Street3: Unknown
Registrant City: Drums
Registrant State/Province: Unknown
Registrant Postal Code: PA
Registrant Country: Unknown
Registrant Phone: Unknown
Registrant Fax: Unknown
Registrant Email: Unknown
Admin ID: Unknown
Admin Name: GROENINGER MATTHEW
Admin Organization: Unknown
Admin Street1: ATTN THELEDGE.NET
Admin Street2: care of Network Solutions
Admin Street3: Unknown
Admin City: Drums
Admin State: PA
Admin Postal Code: 18222
Admin Country: US
Admin Phone: 570-708-8780
Admin Fax: Unknown
Admin Email: zd6ge8sm24s@networksolutionsprivateregistration.com

Web Images Videos Maps News Shopping Gmail more ▼

Web History | Search settings | Sign in

Google   "the ledge"

Search   Advanced Search

---

**Web**   Show options...

Results 1 - 10 of about **1,770,000** for **"the ledge"**. (0.30 seconds)

### The Ledge - Chicago attractions, chicago loop buildings ... 🔏

**The Ledge** brings an exhilarating new experience to the Skydeck. At 1353 feet up, **The Ledge's** glass boxes extend out 4.3 feet from the skyscraper's Skydeck ...
www.theskydeck.com/**theledge**.asp - Cached - Similar

Sponsored Links

**The Ledge** at Amazon
Low Prices on **The ledge**
Free 2-Day Shipping w/ Amazon Prime
www.Amazon.com/Books

See your ad here »

### The Ledge Poetry and Fiction Magazine 🔏

**The Ledge** No.31, our twentieth anniversary issue, features over 200 pages of cutting-edge contemporary poetry and fiction by a wide range of contributors ...
www.**theledge**magazine.com/ - Cached - Similar

### The Ledge - Powered by vBulletin 🔏

Feb 16, 2010 ... This is a discussion forum powered by vBulletin. To find out about vBulletin, go to http://www.vbulletin.com/ .
Rumours - Stevie Nicks - Chit Chat - Peter Green
ledge.fleetwoodmac.net/index.php - Cached - Similar

### Image results for **"the ledge"** - Report images



### The Ledge - Top - Catalog 🔏

**The Ledge** is a pioneer in the Outdoor/Mountaineering business. We provide great gear for all those who enjoy the outdoors- Gear for activities like camping, ...
www.**theledge**outdoorstore.com/ - Cached - Similar

### 'Ledge' at Sears Skydeck opens Thursday - Chicago Breaking News 🔏

Jul 1, 2009 ... **The ledge** was designed by Sears Tower's original architects, Skidmore, ... Admission to the Skydeck, including **the Ledge**, is $14.95. ...
www.chicagobreakingnews.com/.../skydeck-heights-sears-tower-chicago-tourist.html - Cached - Similar

### Cityscapes: The Ledge at Sears Tower proves the sky is calling again 🔏

Jul 8, 2009 ... When I sent out a message on Facebook on Tuesday alerting my friends on the social-networking site that I was heading to **The Ledge**, ...
featuresblogs.chicagotribune.com/.../**the-ledge**-at-sears-tower-proves-the-sky-is-calling-again-.html - Cached - Similar

### Theledge.net 🔏

You are tremendously sweet, little Alphie. Even when you are misbehaving. This evening you had a little trouble going to bed. Two hours after your bed time ...
www.**theledge**.net/ - Cached - Similar

**Small Business Solutions**

VIEW MY PRODUCTS / SERVICES

🛒 CART SIGN-UP FOR OUR MAILING LIST
Sul

### Company Search Results
Sort list by: Relevance  🔲 

< previous page          Showing page 1 of 1 pages          next page >

| Type | Company Name | Address | |
|---|---|---|---|
| | LEDGE CORPORATION | 4810 146TH ST, MIDLOTHIAN, IL | [Select] |
| | LEDGE CORP, THE | 1347 S MELLONVILLE AVE, SANFORD, FL | [Select] |
| | L-EDGE, INC. | 10685 BEDFORD AVE STE 201, OMAHA, NE | [Select] |
| | LEDGES THE | 8501 TIMARU TRL, RENO, NV | [Select] |
| | LEDGES THE | 2 W MARKET ST, LEESBURG, VA | [Select] |
| | LEDGE CORP | 8501 W BOWLES AVE STE 2-C510, LITTLETON, CO | [Select] |
| | LEDGE THE | 166 CHURCH ST, BURLINGTON, VT | [Select] |
| | LEDGES CORPORATION, THE | 207 W CLARENDON AVE UNIT 14A, PHOENIX, AZ | [Select] |
| | LEDGES OF HUNTSVILLE, LTD., THE Also Traded as LEDGES THE | 32 CASTLE DOWN DR, HUNTSVILLE, AL | [Select] |
| | LEDGE INC | 2124 SISKIYOU LN, CORONA, CA | [Select] |
| | LEDGE INC, THE | 1449 CEMETERY RD, TOWER, MN | [Select] |
| | LEDGE THE | 101 W 100 N, PROVO, UT | [Select] |
| BR | PULTE HOME CORPORATION Also Traded as LEDGES, THE | 9782 FIRELANDS DR, TWINSBURG, OH | [Select] |
| HQ | BROOK LEDGE INC | 12 GOTWALS LN, OLEY, PA | [Select] |
| HQ | PORTER HOSPITAL, INC Also Traded as CEDAR LEDGE | 115 PORTER DR, MIDDLEBURY, VT | [Select] |
| | LEDGE 7 INC | 721 WOOD HOLLOW DR SE, MARIETTA, GA | [Select] |
| | LEDGE HOA THE | 820 E 7TH ST, CHARLOTTE, NC | [Select] |
| | LEDGE ROAD LLC | 57 LEDGE RD, NORTH CHELMSFORD, MA | [Select] |
| | LEDGE, LLC, THE | 580 EAST BLVD, CHARLOTTE, NC | [Select] |
| | LEDGES LLC, THE | 1200 TRILLIUM CIR, RALEIGH, NC | [Select] |
| | LEDGES BY THE BAY | 930 COMMERCIAL ST RTE 1, GLEN COVE, ME | [Select] |
| | LEDGES FUND I LLC | 1 HSBC CTR STE 3400, BUFFALO, NY | [Select] |
| | LEDGE FARMS | 7495 MAPLE STREET RD, BASOM, NY | [Select] |
| | LEDGES LAND LLC | 335 E SAINT GEORGE BLVD STE 202, ST GEORGE, UT | [Select] |
| | LEDGE SPORTS, INC | 180 SOUTH GARNET ST, TOOELE, UT | [Select] |
| | LEDGE HAVEN | 18467 COUNTY ROAD 541, BLOOMFIELD, MO | [Select] |
| | LEDGE MUSIC | 719 E MAPLE ST, GLENDALE, CA | [Select] |
| | LEDGE WATER INC | HC 33 BOX 26, BARKSDALE, TX | [Select] |



Hoover's
**Lead Builder**
**Your Leads.**
**Your Way.**
**2 Minutes.**

HOOVERS          Get Started Today